In the Matter of ANGEL BURGOS, Petitioner, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, et al., Respondents. (And Five Other Proceedings.)

Third Department, May 9, 1985

**APPEARANCES OF COUNSEL**

*David B. Hopkins, David Leven* and *John D. Charles* for petitioners.

*Robert Abrams, Attorney-General (Betsy Broder, Martin A. Hotvet* and *William J. Kogan* of counsel), for respondents.

**OPINION OF THE COURT**

MAHONEY, P. J.

These CPLR article 78 proceedings were commenced by inmates at State correctional facilities to review disciplinary sanctions imposed by prison officials upon findings of misconduct made after unrelated superintendent's proceedings. The scope of our review is, of course, limited to determining whether the findings are supported by substantial evidence. One issue common to all of these cases is that the primary, if not the only, evidence introduced against the inmates consisted of the unsworn misbehavior reports, written by correction officers, which served to commence the disciplinary proceedings. Petitioners take the position that the unsworn misbehavior reports, standing alone, cannot constitute substantial evidence to support a charge of misconduct.

Substantial evidence means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180). In a superintendent's proceeding, as in most administrative proceedings, the technical rules of evidence do not apply (*cf.* State Administrative Procedure Act § 306 [1]), such that hearsay evidence is admissible. The Court of

Appeals has rejected the suggestion that some minimum quantity of the evidence which supports an administrative decision must be of a kind admissible in a court proceeding (*Matter of Eagle v Paterson*, 57 NY2d 831, 833; *300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra*, p 180, n).

This court has recently applied this reasoning to inmate disciplinary proceedings and has sustained determinations based solely on misbehavior reports (*see, Matter of Gonzales v LeFevre*, 105 AD2d 909, 910; *Matter of Garcia v LeFevre*, 102 AD2d 1004, 1005, *revd on other grounds* 64 NY2d 1001; *but see, Matter of Jones v Smith*, 120 Misc 2d 445, *affd* 101 AD2d 705, *affd* 64 NY2d 1003). Thus, we reject petitioners' contention that unsworn hearsay misbehavior reports cannot constitute substantial evidence to support a determination of guilt made as a result of a superintendent's proceeding.[*] The focus of the inquiry is not on whether the evidence is hearsay, but on whether the evidence has sufficient relevance and probative value as to constitute substantial evidence. We note that this holding does not deny an inmate the ability to confront or cross-examine the declarant in the misbehavior report since he can, subject to certain limitations, call such individual as a witness (7 NYCRR 254.5; *see, Matter of Garcia v LeFevre*, 64 NY2d 1001). Another issue common to these cases is conflicting testimony of inmates and correction officers. Resolution of such questions of credibility is for the hearing officer (*see, Matter of Witherspoon v LeFevre*, 82 AD2d 959, 960, *appeal dismissed* 54 NY2d 829).

Turning to the instant cases, petitioner Marlon Campbell was charged with loud and boisterous conduct, refusal to obey a direct order, destruction of State property and assault. He admitted the first charge. The other charges were supported only by written misbehavior reports. Regarding the second charge, the misbehavior report, written by the correction officer who witnessed the event, states that petitioner was given three direct orders to be quiet and stay off his gate and that he refused and responded with obscene remarks. At the hearing, petitioner denied the charge. Another misbehavior report stated that a set of headphones, which was State property and was assigned to petitioner, was found damaged. Petitioner admitted that he was responsible for damaging the headphones, but stated that he accidentally stepped on them. Regarding the assault charge, the misbehavior report, written by a correction officer who was a witness and indorsed by another correction officer who was a

---

[*] While a misbehavior report is clearly hearsay, presuming that the proper foundation was laid, it could be admissible pursuant to the business records exception to the hearsay rule (CPLR 4518 [a]).

witness, stated that prior to a strip search, petitioner punched the officer in the head and, when restrained, continued to struggle and kicked the other officer. Petitioner denied that he punched or kicked either officer. He stated that both officers struck him first and that he simply held one of them. Each misbehavior report contains a detailed description of the incident provided by an eyewitness. With respect to the second and fourth charges, petitioner simply denied the charges and gave a contradictory story, thus creating a pure issue of credibility which was resolved against him. Regarding the charge of destruction of State property, the hearing officer was free to reject petitioner's explanation that he accidentally damaged the headphones. Thus, the determination of guilt of all four charges was supported by substantial evidence.

Petitioner Kenneth Spulka was found guilty of assault and refusal to obey a direct order. The sole evidence in support of the charges was the misbehavior report prepared by a correction officer who witnessed the incident. The report stated that the officer saw petitioner hitting another inmate with a piece of wood. The officer stated that petitioner struck the other inmate after being ordered to stop and then both inmates ran away. At the hearing, petitioner admitted to all the facts in the report except that he stated that he hit the other inmate with his fist and not with a piece of wood. In addition, petitioner testified that the other inmate had attacked and cut him with a knife and that he struck the other inmate in self-defense. He also testified that there were other inmates involved in the incident. The misbehavior report did not refer to any facts relevant to petitioner's claim. In some cases, where an inmate offers uncontradicted proof supportive of a claim of self-defense, an assault charge could not properly be sustained on merely a misbehavior report which does not speak to any of the facts relevant to such a claim (cf. Matter of Cook v Coughlin, 97 AD2d 663; Matter of Mallard v Dalsheim, 97 AD2d 545). However, in this case, while petitioner stated that there were other inmates present who would have seen the incident, including one who allegedly had come to his aid, petitioner failed to request that any inmates or the correction officer be interviewed or called as witnesses. Additionally, although petitioner testified that the other inmate cut him on the ear, arm and head, he offered no witnesses or documentary evidence to substantiate such claim. In light of these circumstances, as well as the fact that petitioner ran away when the correction officer came on the scene, it was not unreasonable for the hearing officer to choose to disbelieve petitioner's claim of

self-defense. Therefore, the determination of guilt was supported by substantial evidence.

■ Petitioner Antoine Bottenbley was charged with assaulting a correction officer and refusing a direct order. He was found guilty of the charges. The evidence in support included the misbehavior report written by the officer who was assaulted, an interdepartmental communication prepared by another officer who came on the scene and an unusual incident report, which was prepared by the supervisor of the officers involved and which purports to describe the incident. The unusual incident report is of little probative value since its author was not a witness to the incident and the report does not specify the source of the information. However, the misbehavior report and the interdepartmental communication were written by eyewitnesses and contained a detailed account of the incident. Also introduced were photographs of the assaulted officer, which substantiate his statement that he was punched in the face. Petitioner testified that he did not punch the officer, but wrestled with him. Two other inmates testified that petitioner wrestled with the officer but did not punch him. One of the inmates was impeached by a prior statement in which he had said that petitioner "smacked" the officer. The hearing officer was thus presented with a pure issue of credibility. Further, even if petitioner's account of the incident was true, the hearing officer still could have concluded that the wrestling constituted an assault on the officer. Therefore, the finding of guilt was supported by substantial evidence.

■ Petitioner Warren Lane was charged with two counts of assault, two counts of refusing to obey a direct order and one count of creating a disturbance, based on a series of incidents. Each count was supported by a misbehavior report prepared by a correction officer who witnessed the incident. Each report contains a detailed description which fully supports the finding of guilt. Regarding one of the assault charges and one of the charges of refusal to obey a direct order, petitioner simply denied the charges, thereby creating an issue of credibility which the hearing officer resolved against petitioner. Petitioner also denied the charge that he created a disturbance in the prison hospital. However, that charge was supported not only by a misbehavior report, but by direct testimony of a physician's assistant at the hospital. Regarding the remaining assault charge, the misbehavior report, prepared by the correction officer who was assaulted, states that petitioner punched him. Petitioner neither admitted nor denied that he punched the officer. He testified that the officer punched him first. He also

introduced the testimony of three inmates who testified that they saw correction officers striking petitioner and that he was bleeding profusely. However, none of them saw the initial altercation. Additionally, after the incident, petitioner was taken to the hospital where he refused to be examined by the physician's assistant. The physician's assistant testified that he saw no blood on petitioner. Based on all of the evidence, it was not unreasonable for the hearing officer to choose to disbelieve petitioner's account of the incident. Turning to the last charge, a misbehavior report, prepared by a correction officer who was a witness, states that the officer ordered petitioner to return to the yard and he refused. Petitioner stated that he wanted to leave the yard because it was icy and he had a bad back. However, one of his own witnesses testified that petitioner asked to leave the yard because he did not feel good. Because of this inconsistency, the hearing officer was free to discredit petitioner's excuse. In our view, the determination of discipline against petitioner Warren Lane is supported by substantial evidence.

■ Petitioner Jerome Williams was found guilty of refusal to obey a direct order, assault, creating a disturbance and refusal to submit to a search. The evidence against petitioner consisted solely of misbehavior reports written by a correction officer who witnessed the incidents. The report is written in sufficient detail to sustain the charges. Testimony introduced by defendant does not seriously challenge the allegations in the misbehavior report except for the assault charge. The report states that petitioner kicked two officers and attempted to kick a third officer. Petitioner testified that he did not kick any of the officers. Four other inmates testified that they did not see petitioner assault any of the officers. An issue of credibility was thus presented such that the hearing officer's decision was supported by substantial evidence.

■ The final proceeding involves a charge of assault against petitioner Angel Burgos. Petitioner was alleged to have held another inmate so that a third inmate could stab him. Two misbehavior reports were issued by correction officers. One states simply, "On the above date and time I * * * received an order by [a superior] to write inmate Burgos a misbehavior report for suspicion of assault." The other, prepared by the superior officer states, "Based on investigation by [another officer], confidential information was received indicating Burgos was involved in the assault on [the victim]." These reports are of no probative value. The authors of them were not witnesses, nor do the reports indicate the sources of information or the opportunity of such sources to view the incident. The hearing officer also

viewed certain confidential information which this court has obtained for in camera review. The documents generally deal with the investigation of the incident by correction officers. There are two statements in these memoranda that petitioner assisted in the stabbing incident. However, it is clear that the authors' statements were not based on personal knowledge, nor is there any indication of the source or reliability of such statements. Thus, these statements are of no probative value. Also contained in the confidential memoranda is a statement by a correction officer that he displayed a photograph array of similar looking individuals to an eyewitness of the incident who positively identified petitioner as one of the assailants. It is clear from the statement that the witness had an opportunity to clearly view the attackers and that he positively identified petitioner. Petitioner denied the charge and offered the testimony of two other inmates that he did not commit an assault. In our view, the confidential information was properly considered (*see, Matter of Boyd v Coughlin,* 105 AD2d 532) and constituted substantial evidence to support the charge. While the author of the report was not a witness to the assault, he did have firsthand knowledge of what he was reporting, i.e., that the witness identified the assailants out of the photograph array. Further, since the witness had an opportunity to observe, the information is reliable.

The evidence offered by petitioner simply created a question of credibility.

LEVINE, J. (concurring). Since the Court of Appeals in *Matter of Garcia v LeFevre* (64 NY2d 1001) did not reach the dispositive issue in the instant cases, the position of the majority in our *Garcia* decision (102 AD2d 1004) still controls. Therefore, I am constrained to concur.

KANE, CASEY and WEISS, JJ., concur with MAHONEY, P. J.; LEVINE, J., concurs in a separate opinion.

Determinations confirmed, and petitions dismissed, without costs.