**20** In the Matter of LARRY BARNES, Petitioner, v EUGENE S. LEFEVRE, as Superintendent of Clinton Correctional Facility, et al., Respondents.—Per Curiam. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Clinton County) to review a determination of respondent Commissioner of Correctional Services finding petitioner guilty of violating certain disciplinary rules.

Petitioner, an inmate at Clinton Correctional Facility, was served with a misbehavior report alleging that he assaulted Correction Officer Lyndon Johnson as he was about to be escorted to a Tier III hearing. The report was indorsed by two other officers who participated in the ensuing struggle to subdue petitioner. At the subsequent hearing following his plea of not guilty, petitioner requested that the "feed up" man on the day of the incident, whose name he did not know, be called as a witness. The hearing was adjourned and an effort was made to determine the identity of the requested witness. The witness was located and, in accordance with the hearing record sheet, was interviewed and refused to testify. The hearing continued with Johnson's testimony and concluded with a finding of petitioner's guilt. No further request for any witnesses was made by petitioner.

In this proceeding, it is petitioner's contention that (1) it was the duty of the hearing officer to compel the recalcitrant witness to testify, (2) certain exculpatory documentary evi-

dence should have been examined by the hearing officer, and (3) there is a lack of substantial evidence to sustain the charge against petitioner. Initially, we reject the substantial evidence argument. The hearing officer was presented with conflicting versions of an incident provided by the participants therein. He accepted the version given by Johnson, which, together with the written report, provides more than substantial evidence to sustain his determination *(see, Matter of Burgos v Coughlin,* 108 AD2d 194, 196-197). Next, there is no indication in the record before us that petitioner directly requested the hearing officer to examine or produce any records on his behalf. He was specifically asked at the end of the hearing if he desired to present any further evidence, and he responded in the negative.

Finally, we find no violation of petitioner's rights by the hearing officer's failure to compel the testimony of a requested witness who refused to testify. Every effort was made to identify and locate the "feed up" man requested by petitioner and he was fully aware of the witness's refusal to testify. Accordingly, there was no denial of petitioner's right to call witnesses and, thus, no violation of any rule or regulation providing for such a right *(see,* 7 NYCRR 254.5 [a]).

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Main, Yesawich, Jr., and Harvey, JJ., concur.

Levine, J., dissents and votes to annul in the following memorandum. Levine, J. (dissenting). I respectfully dissent. The majority concludes that "there was no denial of petitioner's right to call witnesses" because (1) the "feed up" man, an inmate named Bailey whom petitioner requested be called as a witness, was contacted by correctional authorities (albeit outside petitioner's presence), (2) Bailey advised them of his unwillingness to testify, and (3) this fact was communicated to petitioner when the disciplinary hearing was resumed in petitioner's hospital room where he was still recovering from the serious injuries he incurred in the altercation out of which the charges arose. The first infirmity in the majority's resolution of this issue is that at no stage of this proceeding, including review before this court, have respondents claimed that petitioner was afforded his right to call witnesses by the foregoing procedure. Rather, respondents' position throughout has been that institutional safety considerations justified their denial of petitioner's right to call witnesses. Thus, the majority has sustained respondents' determination on a ground never invoked by the administrative agency, a practice en-

joined repeatedly by the Court of Appeals *(see, Matter of Parkmed Assoc. v New York State Tax Commn.,* 60 NY2d 935, 936; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 593).

Turning to the actual justification that respondents have advanced for their determination, they have conceded that Bailey could have been ordered by correctional authorities to appear at the hearing and to testify to his version of what happened or at least to explain why he was reluctant to testify. The record is entirely devoid of any individualized facts or circumstances showing that, in this particular case, respondents' failure to honor petitioner's request to call Bailey as a witness was justified on the basis that it would have jeopardized institutional safety or correctional goals, as required by due process *(see, Wolff v McDonnell,* 418 US 539) and State regulations *(see,* 7 NYCRR 254.5 [a]). Instead, their sole argument is that compelling the attendance of a recalcitrant inmate witness *inherently* poses the danger of promoting animosity within a prison facility and hence *invariably* jeopardizes institutional safety. In effect, respondents have fashioned a per se rule, not incorporated in State regulations, dispensing with their duty to call a certain class of witnesses. Such a rule, even if duly embodied in a regulation, would have serious due process implications *(see, Dalton v Hutto,* 713 F2d 75, 78).

Although deference is to be accorded to a determination by prison officials that calling a witness presents a danger to institutional safety, and the reasons therefor may be furnished after the close of the administrative hearing without violating due process, the burden is on prison authorities to justify the denial of this fundamental right of an inmate by an articulated reason logically related to a legitimate correctional security purpose *(Ponte v Real,* 471 US 491, —, 105 S Ct 2192, 2195-2197). The conclusive presumption advanced by respondents that, invariably, an involuntary appearance by an inmate witness will threaten prison security, fails to satisfy these requirements. Without some inquiry into the facts and circumstances of the particular case, institutional safety is no more logically related to honoring a witness's reluctance to appear than it is to honoring an accused inmate's request to compel a witness's attendance. Moreover, the bald, posthearing conclusion asserted by respondents here without supporting facts effectively precludes judicial review *(see, Hayes v Thompson,* 637 F2d 483, 488; *Matter of Garcia v LeFevre,* 102 AD2d 1004, 1006 [dissenting opn], *revd* 64 NY2d 1001).

Without necessarily reaching the constitutional issues raised here, it is sufficient for me to conclude that respondents' duty under 7 NYCRR 254.5 (a) is not satisfied by merely requesting the voluntary appearance of an inmate witness. Respondents are obliged to take the steps within their authority to secure such a witness's appearance or to furnish justification, based upon the circumstances of the particular case at hand, for their failure to do so as required under the regulation, using, if necessary, the alternative means provided in 7 NYCRR 254.5 (b) to establish support for that determination. Since such justification as required by the regulation is absent from the record herein, the determination should be annulled *(see, Matter of Garcia v LeFevre, 64 NY2d 1001, 1003, supra).*