■ In the Matter of ETTORE DE TORRES, Petitioner, v THOMAS COUGHLIN, as Commissioner of the New York State Department of Correctional Services, et al., Respondents.— Kane, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Correctional Services which found petitioner guilty of violating a prison disciplinary rule.

Petitioner, an inmate at Auburn Correctional Facility, was charged in a misbehavior report with assaulting a fellow prisoner named Fred Watson on June 27, 1985. The report described an incident which occurred at about 7:25 P.M. on the

---

date in question at the south yard weight post, at which time Correction Officer Christopher Barrette became aware of a commotion behind him and turned to notice petitioner and Watson "standing face to face". The two inmates then started walking in different directions; petitioner left the area and Watson remained an additional five minutes, when he "then fell to the ground". Watson was taken "to the facility hospital and was found to have been stabbed three times".

A Superintendent's disciplinary hearing was held July 2, 1985, at which petitioner was found guilty of misbehavior and sanctions were imposed. This result was affirmed by respondent Commissioner of Correctional Services on August 21, 1985. That determination was annulled by Supreme Court on March 19, 1986 because of procedural defects and remitted for a proper hearing, which was held on April 1, 1986. An administrative protective custody hearing was previously held on March 2, 1986, which presented numerous issues raised by petitioner in his brief in this case. However, respondents have agreed to administratively reverse and expunge the records and dispositions of that hearing and, accordingly, the issues raised by petitioner therein are not before this court (see, Matter of Barnes v LeFevre, 69 NY2d 649).

At the Superintendent's hearing held on April 1, 1986, Barrette's testimony was similar to the facts outlined in his misbehavior report but added the following facts: that he first observed petitioner as he "was getting up from the ground picking up a two by four", that two inmates in front of him about 10 feet from petitioner and Watson "looked in that area as though there was something going on", and that Watson and petitioner were 10 feet apart. Barrette was unable to identify the other inmates and did not question them. Correction Officer Charles Murphy testified that as he helped remove Watson from the yard on a stretcher, he asked him what happened and Watson stated that "inmate De Torres had shanked 'em". At petitioner's request, Watson's testimony was taken at the hearing by means of a direct telephone conversation between the Hearing Officer and Watson, then confined at another institution, wherein questions propounded by petitioner were presented to Watson and the answers entered in the record of the hearing. In this fashion, Watson denied that petitioner assaulted him, that he ever stated that petitioner did assault him, and that he was ever asked to testify at any other proceeding regarding the incident. Watson further stated that, if absolutely necessary, he would sign a statement that petitioner was not the one who stabbed him on the date

in question. No further witnesses were requested by petitioner and the Hearing Officer found petitioner guilty, crediting the testimony given by Barrette and accepting the hearsay testimony of Murphy.

Thus, the issue on this appeal is whether there is substantial evidence to support the Hearing Officer's decision, which, in turn, rests on a determination as to the credibility of witnesses. In our view, there is present the requisite "substantial evidence" which properly includes the hearsay testimony of Murphy (see, People ex rel. Vega v Smith, 66 NY2d 130, 139; Matter of Burgos v Coughlin, 108 AD2d 194, 197, lv denied 66 NY2d 603). The fact that Watson later recanted the statement made to Murphy merely raises a question of credibility for resolution by the Hearing Officer, and we need not speculate on reasons assigned for that recantation.

Determination modified, without costs, by annulling so much thereof as directed that petitioner be placed in involuntary protective custody; all records and references to an administrative protective custody hearing held March 2, 1986 are directed to be expunged; and, as so modified, confirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.