589 N.W.2d 861 (1999)
8 Neb. App. 69
Robert N. MOORE, appellee,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES APPEALS BOARD, appellant.
No. A-98-254.
Court of Appeals of Nebraska.
January 26, 1999.
*862 Don Stenberg, Attorney General, and Melanie J. Whittamore-Mantzios, Lincoln, for appellant.
Robert N. Moore, pro se.
*863 SIEVERS, MUES, and INBODY, Judges.
MUES, Judge.

I. INTRODUCTION
The Nebraska Department of Correctional Services (DCS) appeals the decision of the Douglas County District Court reversing a ruling by the DCS Appeals Board (Appeals Board) finding that Robert N. Moore violated 68 Neb. Admin. Code, ch. 5, § 5(I)(H) (1994), which prohibits abuse of drugs or intoxicants. For the reasons set forth below, we reverse the order of the district court and remand the matter with directions.

II. BACKGROUND
On June 9, 1997, Moore, an inmate at the Omaha Correctional Center, voluntarily submitted to a urine test. Sgt. Jeff Parker of the Omaha Correctional Center received the results of the drug screen test on June 13. The test showed positive results for cannabinoid. Because of the positive drug test results, Parker suspected that Moore had used some form of cannabinoids during the 30 days prior to the urine test.
Parker issued a misconduct report charging Moore with violating § 5(I)(H), which prohibits the abuse of drugs or intoxicants. A preliminary hearing was held on June 14, 1997, before a Sgt. D. Berglund, the investigating officer. At the hearing, Moore was given copies of a statement of testing, the testing results, a statement by the laboratory technician, and the chain of possession of evidence. A hearing before the Omaha Correctional Center Institutional Disciplinary Committee (Committee) was scheduled for June 26. Moore requested that the Nebraska rules of evidence be applied during the hearing and requested that Cpl. Sam Walton and Sgt. Michael Simpson appear as witnesses.
After several continuances, the disciplinary hearing was held on July 8, 1997. Simpson and Walton did not appear at the hearing; however, reports from them were presented to the Committee. The Committee also received the misconduct report by Parker, the report by the laboratory technician, the chain of possession tag, and the test results. Parker, the reporting officer, appeared at the hearing but did not testify.
Walton's statement alleged that he had collected the urine sample from Moore and had followed all standard procedures in obtaining the sample. Simpson's statement alleged that after Walton collected the urine sample, Simpson tested the level of the specific gravity of the sample. After Simpson determined that the specific gravity met or exceeded the recommended requirements, Walton sealed the urine sample and placed it into evidence.
Moore testified on his own behalf. He stated that he was innocent and claimed that the sample was contaminated because neither he nor Simpson wore gloves during the procedure. Moore also claimed that Simpson was not properly trained to perform the specific gravity test.
Moore complained that the Committee's acceptance of the incident reports in lieu of live testimony violated his right to have the witnesses sworn and cross-examined. Moore asked that the Committee continue the hearing until the witnesses could be present or, alternatively, dismiss the report. The Committee denied both requests. The Committee found that Moore had violated § 5(I)(H) and imposed a 3-month loss of good time credit and a 30-day room restriction.
The Committee's decision is reflected on a form entitled "Disciplinary Committee Action Sheet." The form contains the following entries regarding witnesses:
 Witnesses requested: ... Who was requested: SGT. SIMPSON,
 CPL. WALTON
 DORZWEILER, T. # 37001 Who came:___
 Who didn't come: SIMPSON,
 WALTON
 Why didn't they come (If denied by
 committee, reasons must be specific):
 WROTE I.R.'s.
*864 There is no explanation in our record of when, or by whom, the name "Dorzweiler" was typed on the form or when, why, or by whom his name was crossed off.
Moore appealed the Committee's decision to the Appeals Board alleging, inter alia, that he was denied due process because he was denied the right to call "Borzweiler" (the inmate's name appears as Borzweiler in some documents and Dorzweiler in others; in order to avoid confusion, we will refer to the inmate as Dorzweiler) and because the Committee provided no explanation for such denial. Moore further alleged that he was denied due process because Simpson and Walton were allowed to present written reports rather than appear personally with no explanation given. Moore also complained that there was insufficient evidence to convict him, that the rules of evidence were not applied, and that Simpson was not properly trained to conduct the specific gravity test. The Appeals Board affirmed the decision of the Committee, and Moore appealed to the district court.
In his appeal to the district court, Moore alleged that his right to due process was violated because the Committee disregarded his request for the testimony of an inmate witness without giving any explanation. Moore also alleged that he was denied due process because the Committee denied his request that the formal rules of evidence be applied to the hearing.
The district court found that the Committee violated departmental policy when it failed to state in writing why Walton and Simpson were permitted to testify by incident report rather than appearing in person. The district court determined that this was a substantial violation of Moore's rights and was prejudicial to him. The district court also found that the Committee erred in not applying the rules of evidence to the hearing. The district court held that this was also a substantial violation and was prejudicial to Moore. The district court ordered that the determination of misconduct be expunged from Moore's record and taxed the costs of the action to DCS. DCS timely appealed.

III. ASSIGNMENT OF ERROR
DCS alleges, restated, that the district court erred in reversing the decision of the Committee.

IV. STANDARD OF REVIEW
An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act; the final order rendered by a district court may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Gramercy Hill Enters. v. State, 255 Neb. 717, 587 N.W.2d 378 (1998).
When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Gramercy Hill Enters. v. State, supra.
Determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law, regarding which an appellate court is obligated to reach its own conclusions independent of those reached by the trial court. Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd., 238 Neb. 39, 469 N.W.2d 120 (1991).

V. DISCUSSION

1. DUE PROCESS
It is well settled that " `"[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." '" Dailey v. Nebraska Dept. of Corr. Servs., 6 Neb.App. 919, 924, 578 N.W.2d 869, 873 (1998). It is also well settled that if there is a constitutionally protected liberty interest at stake, then at a minimum, the disciplinary proceedings must comply with constitutionally adequate due process standards. Id. In Nebraska, the reduction *865 of sentence for good behavior is a statutory right which may not be taken away without following minimum due process procedures. Lynch v. Nebraska Dept. of Corr. Servs., 245 Neb. 603, 514 N.W.2d 310 (1994).
Pursuant to Neb.Rev.Stat. § 84-917(2)(b)(vi) (Reissue 1994), Moore filed a petition for review setting forth two reasons why he believed the Appeals Board's decision should be reversed: (1) His right to due process was violated because "the Disciplinary Committee disregarded a request for the testimony of an inmate witness; and that it gave no reason whatsoever for that refusal"; and (2) his right to due process was violated because the Committee failed to employ the rules of evidence at the hearing.

2. APPLICABILITY OF RULES OF EVIDENCE
The district court determined that the failure to use the Nebraska rules of evidence at the hearing violated Moore's right to due process and was prejudicial to Moore. The court's determination was made prior to our decision in Dailey v. Nebraska Dept. of Corr. Servs., supra. There, this court determined that neither due process, a statute, nor administrative regulation requires that the rules of evidence be used in a disciplinary proceeding. The Committee's failure to employ the rules of evidence did not violate Moore's right to due process, and the district court erred in reversing the Appeals Board's decision on this ground.

3. RIGHT TO CALL WITNESSES

(a) Dorzweiler
Neb.Rev.Stat. § 83-4,122 (Reissue 1994) provides in part:
The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The inmate charged shall be permitted to question any person so summoned and shall be allowed to call witnesses and present documentary evidence in his or her defense when permitting him or her to do so will not be unduly hazardous to institutional safety or correctional goals. The person or persons determining the disposition of charges shall state his, her, or their reasons in writing for refusing to call a witness.
This comports with the constitutional requirements for due process in disciplinary hearings. See, Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Ponte v. Real, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See, also, 68 Neb. Admin. Code, ch. 6, § 6.07 (1998).
Moore argued that his right to due process was violated because the Committee denied his request to have Dorzweiler appear as a witness. The only evidence that Moore requested Dorzweiler as a witness is the "Disciplinary Committee Action Sheet" upon which Dorzweiler's crossed-out name appears as a requested witness. The record does not reflect when Dorzweiler's name was added to the form or who added it. The record also does not reflect when, why, or by whom Dorzweiler's name was crossed off. In the blank provided to indicate witnesses who did not appear, only Simpson's and Walton's names are written in.
During the hearing before the Committee, a B. Hendrickson, the chair of the committee, asked Moore: "You requested Corporal Walton and Sergeant Simpson to be present. They are not present, but they have submitted incident reports.... [Y]ou [also] requested that Nebraska rules of evidence be applied to the hearing, is that correct?" Moore responded affirmatively. Moore did not volunteer that he had requested any additional witnesses. In fact, during the entire hearing before the Committee, Moore never informed the Committee that he had requested any witnesses in addition to Walton and Simpson. Dorzweiler's name was never mentioned.
In Moore's appeal to the district court, he alleged that he "had submitted, and the file before the Committee contained, [his] written *866 request for [Dorzweiler's] attendance." No such written request appears in the file before us.
We conclude that the record contains no competent evidence to support Moore's contention in district court that he requested that Dorzweiler appear as a witness before the Committee. Accordingly, we find no due process violation in the Committee's "refusal" to call Dorzweiler as a witness or in failing to state its reasons for not calling him. To the extent the district court's decision was implicitly grounded on this alleged violation, it was erroneous.

(b) Walton and Simpson
The district court did not address Moore's argument regarding Dorzweiler. Rather, the district court concluded that the Committee violated departmental regulations in failing to state in writing its reasons for not requiring Simpson and Walton to appear at the hearing. The district court found that this was a "substantial violation" of Moore's rights and was prejudicial to him.
It is unclear why the district court ignored Moore's assigned error and reversed on a ground not alleged as error in Moore's petition for review. Perhaps, the district court viewed the failure to call Walton and Simpson as witnesses or state the reasons for not doing so as constituting plain error. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Fiscel v. Beach, 254 Neb. 678, 578 N.W.2d 52 (1998).
While we may assume, without deciding, that a district court may note plain error in its de novo review of the record under § 84-917(5)(a), application of that jurisprudential tool is generally restricted to errors which were not raised in the action below. See In re Estate of Morse, 248 Neb. 896, 540 N.W.2d 131 (1995).
In Moore's appeal to the Appeals Board, he alleged that his right to due process was violated because
Walton and Simpson were allowed to testify by way of Incident Reports, and not personally.... I argue that it was wrong to allow the I.R.'s. to substitute for live testimony; and that no reason is supplied for that action. Secondly, the inmate witness, Borzweiler, was not called, with no reason given.
Therefore, Moore did complain below in his appeal to the Appeals Board about the refusal to call all three witnesses but abandoned the ground as to Walton and Simpson when he petitioned for review by the district court.
It seems to us that absent proper application of the plain error doctrine, a district court conducting a review under § 84-917(5)(a) cannot base a reversal of the agency decision under review on grounds not raised in the petition for review filed pursuant to § 84-917. To do so would undermine the purpose of § 84-917(2)(b)(vi) which requires that the petition shall set forth "the petitioner's reasons for believing that relief should be granted." The plain error doctrine, if it was indeed applied by the district court, was done so improperly. Moore had raised this error below and, for reasons unexplained in the record, chose not to present it in his petition for review under § 84-917.
Because Moore abandoned his claims as to the failure to require Walton and Simpson to appear at the Committee hearing or explain their absence in writing, the district court erred in reversing on this ground.

VI. CONCLUSION
Neither due process, a statute, nor administrative regulation requires that the rules of evidence be used in a disciplinary proceeding, and the district court erred in reversing on this ground. Moore abandoned any challenge to the Committee's failure to require Walton and Simpson to appear as witnesses *867 or state in writing their reasons for refusing that request, and the district court erred in reversing on this ground. Finally, the record does not support a finding that Moore requested inmate Dorzweiler to appear as a witness at the Committee hearing. Accordingly, the decision of the district court is reversed, and the matter is remanded with directions to reinstate the Appeals Board's decision.
REVERSED AND REMANDED WITH DIRECTIONS.