DOMINGO SEPULVEDA, APPELLEE, V. NEBRASKA DEPARTMENT
OF CORRECTIONAL SERVICES, APPELLANT.

609 N.W.2d 42

Filed April 4, 2000.   No. A-99-303.

Don Stenberg, Attorney General, and Melanie Whittamore-Mantzios for appellant.

Domingo Sepulveda, pro se.

HANNON, MUES, and CARLSON, Judges.

CARLSON, Judge.

The Nebraska Department of Correctional Services (DCS) appeals the decision of the Lancaster County District Court which reversed a ruling by the DCS Appeals Board (Appeals Board) that Domingo Sepulveda violated 68 Neb. Admin. Code, ch. 5, §§ 005I[C] and 005II(G) (1994), which denominate the offenses of "Aggravated Assault/Assault/Fighting" and theft, respectively. For the reasons set forth below, we reverse the order of the district court and remand the matter with directions.

## BACKGROUND

On June 23, 1998, a Sergeant Milem, an employee of DCS assigned to the Lincoln Correctional Center, was informed by a confidential informant that inmates Justin Allee and Sepulveda, the appellee, had assaulted inmate Thomas Holmes in the penal compound and had stolen various store-bought items from him. A misconduct report was prepared and filed on that same date. The next day, a principal hearing was held on the report, and Sepulveda had no comment at the time but wanted inmates Anthony De Los Santos, Bill Birdhead, and Allee to appear as witnesses at the disciplinary hearing. Sepulveda also submitted inmate interview requests with questions for Holmes, inmate John Fair, and De Los Santos.

At the disciplinary hearing held on July 7, 1998, inmate Floyd Yarbrough appeared as Sepulveda's legal representative. During the hearing, Sepulveda denied any wrongdoing, and he was supported in this position by the testimony of Birdhead and De Los Santos. The disciplinary committee found Sepulveda guilty of the assault and theft and imposed penalties of 21 days' disciplinary segregation for the assault charge and loss of 1 month's good time for the theft charge. Sepulveda appealed to the Appeals Board, claiming primarily that his constitutional rights were violated because he did not have his questions answered by Holmes and that the committee's decision was based on confidential information which was not reliable or credible. The Appeals Board upheld the decision of the disciplinary committee, finding that there was competent evidence to

support the committee's decision and that Sepulveda's due process rights were not violated.

Sepulveda appealed that decision to the Lancaster County District Court, claiming basically the same errors he asserted to the Appeals Board. DCS moved for a protective order to place the confidential information considered by the disciplinary committee under seal and not disclose the information to Sepulveda. This latter motion was granted, but in the district court's decision of February 25, 1999, the court reversed the decision of the Appeals Board and, further, rescinded the protective order in part. DCS appeals.

## ASSIGNMENTS OF ERROR

On appeal, DCS assigns that the court erred in (1) reversing its previous protective order and requiring that the confidential statements of Holmes be disclosed to Sepulveda and (2) finding that the disciplinary committee's failure to call the alleged victim, Holmes, as a witness violated Sepulveda's due process rights.

## STANDARD OF REVIEW

An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act; the final order rendered by a district court may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Gramercy Hill Enters. v. State*, 255 Neb. 717, 587 N.W.2d 378 (1998).

Determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law, regarding which an appellate court is obligated to reach its own conclusions independent of those reached by the trial court. *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991).

## ANALYSIS

At the outset, it should be noted that if there is a constitutionally protected liberty interest at stake, then at a minimum, the disciplinary proceedings must comply with constitutionally adequate due process standards. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In Nebraska, the

reduction of a sentence for good behavior is a statutory right which may not be taken away without following minimum due process procedures. *Id.* Prison disciplinary proceedings are not treated as criminal prosecutions, and therefore, the full panoply of rights due a criminal defendant do not apply to prisoners. *Id.*

In *Wolff v. McDonnell, supra,* the Supreme Court held that when good time credits are a protectable liberty interest, a prisoner facing disciplinary charges must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, *when consistent with institutional safety and correctional goals,* to call witnesses and present documentary evidence in his or her defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. The Court did not specify what amount of evidence would be necessary to support the fact finder's decision. In *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), the Court held that in order to comport with minimum requirements of due process, the findings of the prison board must be supported by "some evidence" in the record. Other jurisdictions have added that although only "some evidence" is required to meet minimum due process requirements, that evidence must have some "indicia of reliability of the information that forms the basis for prison disciplinary actions." *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir. 1987). See, also, *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir. 1985), *cert. denied* 476 U.S. 1142, 106 S. Ct. 2251, 90 L. Ed. 2d 697 (1986); *Kyle v. Hanberry,* 677 F.2d 1386 (11th Cir. 1982). With these preambles in mind, we will proceed to analyze Sepulveda's specific complaints.

### HEARING

The district court's judgment cites the refusal of the disciplinary committee to make Holmes available to answer questions. The court stated that "[e]ven the most minimal requirements of due process [require] that a person who is the alleged victim of an assault be available to answer questions if that is requested by the accused." This position is not supported by the facts of this case or the law.

At the hearing, Sepulveda denied the charges and two of his witnesses testified in support of his position. His complaint

that Holmes was not called or did not respond to questions is initially answered by the fact that there was never a request by Sepulveda for Holmes to be a witness. It should also be noted that there is no DCS rule that allows for written questions to be submitted to a witness. What the rules do provide for, in part, is that an "inmate charged shall be allowed to call witnesses with relevant knowledge and present relevant documentary evidence in the inmate's defense *when permitting the inmate to do so will not be unduly hazardous to institutional safety or correctional goals*." (Emphasis supplied.) 68 Neb. Admin. Code, ch. 6, § 006.07 (1994). Accord Neb. Rev. Stat. § 83-4,122 (Reissue 1999). As we will see, this rule comports with the constitutional requirements of due process in such hearings, and, unless there is a clear constitutional violation, the courts are reluctant to interfere with a prison's internal discipline methods. *Glick v. Sargent*, 696 F.2d 413 (8th Cir. 1983). See, *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Moore v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 8 Neb. App. 69, 589 N.W.2d 861 (1999).

Even if Sepulveda had requested Holmes as a witness, there is no absolute right to have had him present. Compulsory process of witnesses is not an absolute right in any proceeding, but can be limited. *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993); *State v. Jones*, 231 Neb. 47, 435 N.W.2d 167 (1989). The due process available in an open society is much different from the situation presented by a disciplinary proceeding in a state prison. Prisoners do not have an absolute right of confrontation and cross-examination of those furnishing evidence against them in such actions. As stated in *Wolff v. McDonnell, supra*, if such right were allowed, "there would be considerable potential for havoc inside the prison walls." 418 U.S. at 567. As mentioned earlier, prison officials are accorded great discretion to refuse to call witnesses whose testimony is irrelevant or unnecessary, or who may undermine prison authority. *Turner v. Caspari*, 38 F.3d 388 (8th Cir. 1994). Preventing retaliation against an inmate witness is a legitimate security concern justifying prison officials' refusal to allow witnesses at a disciplinary proceeding. *Wolff v. McDonnell, supra.*

For all these reasons, Sepulveda's due process rights were not violated in the disciplinary hearing. To reiterate, he told his story, he called witnesses, and the committee had justifiable reasons, both procedural and substantive, to deny his requests.

## PROTECTIVE ORDER

On November 25, 1998, the district court signed a protective order directing that reports of the confidential informant or informants "shall be kept from the Plaintiff [Sepulveda] and the public and placed under seal and will not be disclosed to anyone without further order of the Court." In the court's February 25, 1999, judgment, the protective order was vacated in part. We find that this was error. As we pointed out earlier, prison officials are justified in withholding information about confidential informants because of the risk of revealing identities. To order the supplying of the identities of confidential informants, or the substance of their information, not only endangers the informants but may be disruptive to prison security. Obviously, in these circumstances, there is a concern for the need to check the reliability of the confidential informant. *Freitas v. Auger*, 837 F.2d 806 (8th Cir. 1988), indicates that the reliability of an informant may be established by a statement on the record by the chairperson of the disciplinary committee that there was a past record of that informant's reliability. Such a statement was made by the chairperson of the disciplinary committee in this case.

## CONCLUSION

We find that the record and the law are not supportive of the district court's decision reversing the decision of the Appeals Board and vacating the protective order in part. Accordingly, the decision of the district court is reversed, and the matter is remanded with directions to reinstate the Appeals Board's decision and the protective order of November 25, 1998.

REVERSED AND REMANDED WITH DIRECTIONS.