FRED BAXTER, APPELLEE, V. NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, APPELLANT.

663 N.W.2d 136

Filed May 27, 2003.    No. A-01-674.

Don Stenberg, Attorney General, and Jennifer Amen for appellant.

Fred Baxter, pro se.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

The Nebraska Department of Correctional Services (DCS) appeals the order of the Lancaster County District Court reversing the decision of the DCS Appeals Board affirming the disciplinary committee's finding that Fred Baxter had violated DCS "Rule

5-I-H - Drug or Intoxicant Abuse." For the reasons stated herein, we reverse.

## BACKGROUND

On November 29, 2000, Baxter submitted a urine sample for drug or alcohol testing. This sample was taken by a caseworker, who filled out a checklist on the "Statement of Testing" form. The caseworker also indicated Baxter's inmate number, recorded the time and date the sample was obtained, and signed the "Statement of Testing." Baxter also signed the form. After obtaining Baxter's urine sample, the caseworker filled out the "Specimen Record for Drugs of Abuse," which form included Baxter's inmate number. The urine sample was then placed in the hospital evidence refrigerator. Allene Norman, the Director of Laboratories for DCS, removed the sample from the refrigerator on November 30 for testing, and the testing revealed a positive result for cannabinoids.

On December 1, 2000, a misconduct report was prepared by a Corporal Wubbels, due to Baxter's positive drug test. On December 26, Baxter sent an inmate interview request form ("kite") requesting that Wubbels, Norman, and the caseworker be present as witnesses at the disciplinary hearing and also attached a list of questions for Norman. The matter came on for hearing on February 2, 2001. On the date of the hearing, Baxter waived his right to an independent confirmatory test to challenge the results of the drug test. At the hearing, Baxter appeared with his representative, and Wubbels and the caseworker appeared as witnesses. Baxter's request to have Norman appear as a witness was denied because the disciplinary committee determined that her statement answered all relevant questions pertaining to the drug test. In making its determination concerning whether Baxter had violated DCS rules regarding drug use, the disciplinary committee relied upon the misconduct report prepared by Wubbels, the testimony of Baxter and the caseworker, the "Specimen Record for Drugs of Abuse," the "Individual Specimen Report," Norman's statement, and the "kite," which included Baxter's questions for Norman.

At the conclusion of the hearing, the disciplinary committee found Baxter guilty of the charge of drug or intoxicant abuse in

violation of DCS rules and imposed as punishment 90 days' loss of good time and 30 days' room restriction. Baxter timely appealed to the DCS Appeals Board, which upheld the decision of the disciplinary committee. The DCS Appeals Board found that Norman's statement was sufficient to establish the reliability of the drug test and that her presence at the hearing was not necessary because her statement that was entered answered all relevant questions. The DCS Appeals Board also found that Wubbels, the reporting employee, had a reasonable belief that Baxter had committed an infraction of DCS rules because the laboratory report received by Wubbels indicated that Baxter had tested positive for cannabinoids. Baxter timely appealed to the Lancaster County District Court.

The matter came on for hearing on May 1, 2001, and the court received into the record the transcript and bill of exceptions from the DCS proceedings. After arguments by both parties, the court took the matter under advisement. On May 16, the district court reversed the decision of the DCS Appeals Board, ordered the incident to be expunged from Baxter's record, and ordered restoration of his good time. The district court specifically found that Norman's unsworn statement, the fact Norman's statement does not indicate that Baxter's specimen was tested in accordance with the protocols set forth in the statement, and the unexplained drug results were insufficient to show that Baxter had violated DCS rules regarding drug abuse.

DCS timely appealed to this court. On August 10, 2001, Baxter filed a motion to dismiss this appeal as moot, alleging that "he will be released from prison before this case can be submitted to the Court or, decided," which motion was denied as premature. DCS then filed a "Notice of Appellant's Position Regarding Rule 7C," alleging that Baxter's discharge from prison did not moot this appeal and that the case falls within the public interest exception to the mootness doctrine. This court entered an order on March 20, 2002, that based on the public interest exception to the mootness doctrine as to the issue, the case should proceed.

## ASSIGNMENT OF ERROR

The sole assignment of error on appeal is that the district court erred in finding that there was not " 'some evidence' " sufficient

to support the disciplinary committee's finding of a DCS rule violation.

## STANDARD OF REVIEW

■ A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Young v. Neth*, 263 Neb. 20, 637 N.W.2d 884 (2002).

■ When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

■ It is well settled that if there is a constitutionally protected liberty interest at stake, then at a minimum, the disciplinary proceedings must comply with constitutionally adequate due process standards. See *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In order to implicate the protections of the Due Process Clause, there must be a protectable liberty interest of the inmate at stake. *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994). See *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991). The Nebraska Supreme Court has previously held that the loss of good time is a protected liberty interest. See *Lynch, supra.*

■ However, prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *State v. Kerns*, 201 Neb. 617, 271 N.W.2d 48 (1978); *Dailey v. Nebraska Dept. of Corr. Servs.*, 6 Neb. App. 919, 578 N.W.2d 869 (1998). Disciplinary hearings are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an administrative hearing. The only limitations are those imposed by due process, a statute, or administrative regulations. *Dailey, supra.*

In *Wolff, supra*, the U.S. Supreme Court established the due process requirements accorded prison disciplinary proceedings and held that when good time credits are a protectable liberty

interest, an inmate facing disciplinary charges must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. However, such rights must be viewed in light of the prison setting and the necessity of the State to maintain an acceptable level of personal safety within those institutions. See *id.*

In the instant case, the record reveals that Baxter received advance written notice of the disciplinary charges and had an opportunity to call witnesses, with the exception of Norman, and to present evidence. The finder of fact made a written statement of the evidence relied upon and the reasons for the disciplinary action. However, this case raises the additional question of whether due process requires reports or statements admitted in prison disciplinary proceedings to be sworn when the author is not present at the proceeding. Because this is a question of first impression, we turn to other states for guidance.

Other courts have allowed unsworn statements and reports into evidence in prison disciplinary proceedings. For example, in *Mtr Burgos v. Coughlin*, 108 A.D.2d 194, 488 N.Y.S.2d 847 (1985), the court held that an unsworn misconduct report was admissible as evidence in prison disciplinary proceedings. However, in *Noreault v. Coombe*, 240 A.D.2d 983, 660 N.Y.S.2d 71 (1997), the court held that an unsworn misconduct report must be annulled where the record did not contain facts establishing some indicia of reliability.

Unsworn exhibits have also been admitted in probation revocation proceedings, which involve a higher standard of proof than disciplinary proceedings. For example, in *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983), the defendant appealed from the revocation of his probation, contending that the lower court erred in admitting both the laboratory reports which indicated positive drug test results and an unsworn letter from the laboratory which summarized the laboratory results. The appellate court held that the hearsay exhibits (laboratory reports and letter) were admissible because they were the regular reports of a company whose business it is to conduct such tests.

■ We likewise find that due process does not require drug test results and statements presented in disciplinary proceedings to be sworn as long as the test results and statements have sufficient indicia of reliability.

In the instant case, the district court found that Norman's unsworn statement, the fact Norman's statement does not indicate that Baxter's specimen was tested in accordance with the protocols set forth in the statement, and the unexplained drug results were insufficient to show that Baxter had violated DCS rules regarding drug abuse. The laboratory report indicates that it is from the Nebraska State Penitentiary Laboratory located in Lincoln, Nebraska. It contains the date and time the results were printed, Baxter's name and inmate number, the collection time and date, the name of the person collecting the specimen, and the results of the test indicating that the inmate tested positive for cannabinoids. Norman's statement sets forth her educational background, her employment history with the laboratory, a description of the type of test used by the laboratory, and the testing procedures. Her statement is also dated and signed.

We find that the laboratory results and statement, although unsworn, are admissible, because the rules of evidence do not apply to disciplinary proceedings. Further, the exhibits have sufficient indicia of reliability to warrant their admission into evidence despite the fact that they are unsworn. Thus, considering Norman's statement and the laboratory results, along with the other evidence contained in the record, we find that there is "some evidence" sufficient to support the disciplinary committee's decision that Baxter had violated DCS rules regarding drug use. Therefore, we reverse the decision of the district court.

This, however, does not end our analysis, since we must also consider whether the disciplinary committee erred in rejecting Baxter's request that Norman appear at the hearing as a witness. Baxter's request to have Norman appear as a witness was denied because the disciplinary committee determined that Norman's statement answered all relevant questions pertaining to the drug test. Stated another way, the disciplinary committee denied Baxter's request to call Norman for the reason that Baxter's questions were not relevant, not that the witness was not relevant.

Although prisoners do not have an absolute right of confrontation and cross-examination of those furnishing evidence against them in prison disciplinary proceedings and prison officials are accorded great discretion to refuse to call witnesses whose testimony is irrelevant or unnecessary, or who may undermine prison authority, *Sepulveda v. Nebraska Dept. of Corr. Servs.*, 9 Neb. App. 133, 609 N.W.2d 42 (2000), both Neb. Rev. Stat. § 83-4,122(4) (Reissue 1999) and 68 Neb. Admin. Code, ch. 6, § 006.07 (2000), set forth procedures for calling witnesses at a disciplinary hearing.

Section 83-4,122(4) provides:

> The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The inmate charged shall be permitted to question any person so summoned and *shall be allowed to call witnesses and present documentary evidence in his or her defense when permitting him or her to do so will not be unduly hazardous to institutional safety or correctional goals.* The person or persons determining the disposition of charges shall state his, her, or their reasons in writing for refusing to call a witness.

(Emphasis supplied.)

Similarly, 68 Neb. Admin. Code, ch. 6, § 006.07, provides in part:

> A facility disciplinary committee may also summon to testify any witnesses or other persons with relevant information of the incident. *The inmate charged shall be allowed to call witnesses with relevant knowledge and present relevant documentary evidence in the inmate's defense when permitting the inmate to do so will not be unduly hazardous to institutional safety or correctional goals. . . .* A facility disciplinary committee shall state its reasons for refusing to call a witness in writing.

(Emphasis supplied.)

In the instant case, the disciplinary committee denied Baxter's request to have Norman appear as a witness without finding that allowing the inmate to do so would be unduly hazardous to institutional safety or correctional goals. The disciplinary committee's failure to so determine violates both § 83-4,122(4) and 68

Neb. Admin. Code, ch. 6, § 006.07. Thus, we find that when the disciplinary committee considers a charged inmate's request to call witnesses with relevant knowledge in the inmate's defense, the request should generally be permitted, unless allowing the inmate to do so will be unduly hazardous to institutional safety or correctional goals. We note that since Baxter has been released from DCS, this determination will not affect his case.

## CONCLUSION

For the reasons stated above, we find that due process does not require drug test results and statements presented in disciplinary proceedings to be sworn as long as the test results and statements have sufficient indicia of reliability. Thus, the decision of the district court is reversed. We further find that when the disciplinary committee considers a charged inmate's request to call witnesses with relevant knowledge in the inmate's defense, the request should generally be permitted, unless allowing the inmate to do so will be unduly hazardous to institutional safety or correctional goals.

REVERSED.