691 N.W.2d 185 (2005)
13 Neb. App. 297
Jason N. WITMER, appellee,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, appellant.
No. A-03-867.
Court of Appeals of Nebraska.
January 25, 2005.
*187 Jon Bruning, Attorney General, and Maureen Hannon for appellant.
Jason N. Witmer, pro se.
SIEVERS, MOORE, and CASSEL, Judges.
SIEVERS, Judge.

INTRODUCTION
The Nebraska Department of Correctional Services (DCS) appeals the order of the Johnson County District Court reversing the decision of the DCS Appeals Board (Appeals Board), which affirmed the decision of the Institutional Disciplinary Committee (IDC) finding Jason N. Witmer guilty of violating a DCS rule for "Aggravated Assault/Assault/Fighting" and sanctioning Witmer by imposing 60 days' disciplinary segregation.

FACTUAL AND PROCEDURAL BACKGROUND
On February 4, 2003, inmate Witmer was involved in an altercation with inmate Christopher Johnson at the Tecumseh State Correctional Institution. Witmer was working in the kitchen when he removed the grate covering the dishwasher drain so that he could clean it off. According to Witmer's testimony before the IDC, Johnson "got mad `cause I was messing up his area and we got into a fight." Witmer denies hitting Johnson with the grate. However, Lt. Michelle Janda stated in her incident report that the grate had blood on it and that it "appeared to have been used by inmate Witmer to hit inmate Johnson." On the day of the incident, a Corporal Cole filed a misconduct report against Witmer, alleging that Witmer had violated DCS rules 5-I-C, aggravated assault/assault/fighting; 5-II-E, disobeying a direct order; 5-III-A, flare of tempers/minor physical contact; and 5-II-H, use of threatening language or gestures/fighting. A hearing was held before an investigating officer on February 7.
On February 19, 2003, Witmer appeared before the IDC. The IDC found Witmer guilty of aggravated assault/assault/fighting because "[Witmer] admits to fighting with another inmate, which caused serious bodily injury, which required physician[']s attention as a result of injuries received during altercation." Witmer received 60 days' disciplinary segregation. The IDC found that the incident was "serious" because a physician needed to come to the institution and render medical attention and because the incident "jeopardized safety [and] security in this maximum security prison."
Witmer appealed the IDC's decision to the Appeals Board. The Appeals Board assessed Witmer's argument to be that the incident was not serious enough to be considered aggravated assault because there was no "serious bodily injury." He also argued that he was prejudiced because he had no notice he was being accused of using a weapon "until the Hearing Officer accused him" and that he was unable to prepare a defense. Upon reviewing the record, the Appeals Board found sufficient evidence to support the IDC's decision. The Appeals Board stated that the incident report by the attending registered *188 nurse indicated that Johnson "sustained multiple lacerations to the head, face, hand and fingers along with contusions." And, the incident report by Lieutenant Janda stated that a physician was called in to suture Johnson's injuries. The Appeals Board agreed that such evidence was sufficient to find that Johnson incurred serious bodily injury as a result of the fight. Therefore, the Appeals Board affirmed the IDC's decision.
Pursuant to the Administrative Procedure Act, Witmer then appealed to the district court, which reversed the decision of the Appeals Board after finding there was "insufficient evidence" to support the charge because there was no "serious bodily injury" as defined by Neb.Rev.Stat. § 28-109 (Cum.Supp.2004). DCS timely appeals to this court.

ASSIGNMENTS OF ERROR
On appeal, DCS contends that the district court erred in "reversing the decision of the ... Appeals Board because [the court] determined that there was no substantial evidence to support a finding of serious bodily injury."

STANDARD OF REVIEW
Under Neb.Rev.Stat. § 84-917(5)(a) (Reissue 1999), when a petition instituting proceedings for review under the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without a jury de novo on the record of the agency. Miller v. Horton, 253 Neb. 1009, 574 N.W.2d 112 (1998).
A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Barnes v. Nebraska Dept. of Corr. Servs., 12 Neb.App. 453, 676 N.W.2d 385 (2004). See Neb.Rev.Stat. § 84-918(3) (Reissue 1999). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id. To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. City of Omaha v. Kum & Go, 263 Neb. 724, 642 N.W.2d 154 (2002).

ANALYSIS
In reversing the decision of the Appeals Board, the trial court found that "[t]he standard of proof to sustain a charge of violating a DCS rule is substantial evidence." Neb.Rev.Stat. § 83-4,122 (Reissue 1999) provides that in prison disciplinary cases which involve the imposition of disciplinary isolation or the loss of good-time credit, the standard of proof to sustain the charge shall be substantial evidence. See, also, Dailey v. Nebraska Dept. of Corr. Servs., 6 Neb.App. 919, 578 N.W.2d 869 (1998). Because Witmer was sanctioned to disciplinary segregation, the applicable standard of proof is substantial evidence, which has been defined as"' "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."'" See id. at 925, 578 N.W.2d at 874.
We take this opportunity to point out that in our opinion, the decisions in Baxter v. Nebraska Dept. of Corr. Servs., 11 Neb.App. 842, 663 N.W.2d 136 (2003), and *189 Claypool v. Nebraska Dept. of Corr. Servs., 12 Neb.App. 87, 667 N.W.2d 267 (2003), incorrectly hold that the standard of proof in a prison disciplinary case involving loss of good-time credit is "some evidence," rather than "substantial evidence" as provided in § 83-4,122(9).
We now look to whether there was substantial evidence to find that Witmer violated DCS rule 5-I-C, aggravated assault/assault/fighting, which is defined as: "Assault on another person which causes pain or bodily injury, threatened assault, fighting with another person resulting in serious bodily injury, spitting or throwing bodily waste or fluids on another person, or sexual assault." 68 Neb. Admin. Code, ch. 5, § 005I[C] (2000).
The district court defined serious bodily injury, for purposes of the aggravated assault/assault/fighting rule, using the Nebraska Criminal Code, which states: "Serious bodily injury shall mean bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 28-109(20). In using this definition, the district court reasoned that "[b]ecause [the terms used in DCS rule 5-I-C] were not defined by [administrative] regulation, it is not unreasonable to assume that it was intended by [DCS] that the terms['] definitions be similar to the general definitions under Nebraska law per Neb.Rev.Stat. § 28-109." We disagree.
In the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of words in a rule or regulation which is plain, direct, and unambiguous. Dittrich v. Nebraska Dept. of Corr. Servs., 248 Neb. 818, 539 N.W.2d 432 (1995). Unless there is a clear constitutional due process violation, courts are reluctant to interfere with a prison's internal discipline methods. Sepulveda v. Nebraska Dept. of Corr. Servs., 9 Neb.App. 133, 609 N.W.2d 42 (2000).
When viewing the entirety of the regulation, the aggravated assault/assault/fighting regulation, DCS rule 5-I-C, contains various acts constituting the offense, including (1) assault on another person which causes pain or bodily injury, (2) threatened assault, (3) fighting with another person resulting in serious bodily injury, (4) spitting or throwing bodily waste or fluids on another person, and (5) sexual assault. The offenses under DCS rule 5-I-C vary greatly in degree as to the type of harm or injury resulting from the offense  fighting resulting in serious bodily injury to threatened assault resulting in no injury. Despite the lack of injury in some situations, all of the various acts listed under DCS rule 5-I-C are considered Class I offenses. If the IDC finds the offense to be serious or flagrant, a Class I offense is punishable by confinement in disciplinary segregation for a period of time not exceeding 60 days and/or loss of good time not exceeding 1 year. 68 Neb. Admin. Code, ch. 6, § 008.01 (2000). Under DCS rule 5-I-C, the same punishment may result for any of the offenses, regardless of whether there is any injury. Thus, using the criminal code to define "serious bodily injury," which code requires that the injury involve a substantial risk of death or substantial risk of serious permanent disfigurement or protracted loss or impairment of the function of any part or organ of the body, is inconsistent with both the broad scope of DCS rule 5-I-C and the fact that a variety of acts can constitute the offense irrespective of whether an injury is caused  for example, spitting.
*190 Further, treating DCS rule 5-I-C as requiring proof of the same element as required for a criminal conviction for first degree assault, see Neb.Rev.Stat. § 28-308 (Reissue 1995), is not in accord with the objectives of DCS. The DCS rules are designed to maintain order and discipline within the prison setting. See, Neb.Rev.Stat. § 83-171 (Reissue 1999) (DCS is to maintain and administer facilities required for custody, control, correctional treatment, and rehabilitation of persons committed to DCS and for safekeeping of such other persons); Neb.Rev.Stat. § 83-173 (Reissue 1999) (director of DCS is to establish and administer policies and programs for operation of facilities in DCS for custody, control, safety, correction, and rehabilitation of persons committed to DCS). The Nebraska Administrative Code states that the disciplinary procedures of DCS "shall be designed to contribute to the efficient operation of the facility and to be conducive to the successful re-socialization of the inmate confined therein." 68 Neb. Admin. Code, ch. 6, § 002. "Several of the offenses listed may also be considered criminal offenses and consequently shall be subject to state or federal jurisdiction, in addition to the appropriate penalties levied under Rule 6. In this event, the matter may be referred to appropriate law enforcement officials for consideration for prosecution." 68 Neb. Admin. Code, ch. 5, § 005. Consequently, DCS may consider whether a rule violation rises to the level of criminal conduct and may determine whether to contact law enforcement for further prosecution of the offense  at which point the elements constituting the statutory offense would come into play. Clearly, the administrative regulations were not intended to serve the same purpose as the criminal code. Therefore, based on the clear language of the administrative regulations and the difference in purpose between DCS rules and the criminal law, we find as a matter of law that using the criminal definition of serious bodily injury from § 28-109(20) to determine whether Witmer had violated DCS rule 5-I-C was incorrect.
The IDC and the Appeals Board both found that there was sufficient evidence that Witmer inflicted serious bodily injury upon Johnson, who required a physician's attention and sutures for multiple lacerations to the head, face, hand, and fingers. Witmer stated that he and Johnson engaged in a fist fight but that he did not hit Johnson with the grate. In Johnson's "Inmate Interview Request," he stated that a "simple argument" between himself and Witmer became a "fist fight." As to Johnson's injuries, Lieutenant Janda stated in her incident report that Johnson suffered "several lacerations to his head, face, hand, and fingers" and that a physician "was called in to give sutures." Lieutenant Janda also stated that "[t]here was a large amount of blood spatter in the area" and that the grate from the dishwasher had blood on it, as did a pair of gloves used by the inmates in the dishwasher line. Corporal Cole stated in his incident report, "It appeared that inmate Johnson was struck by an object to the head." The incident report of a second reporting employee stated that Johnson was taken to the emergency room and "had cuts to the head and eye and was bleeding." A third reporting employee's incident report stated, "Both inmates had blood on them, and a lot of blood on the floor and wall." A fourth reporting employee stated in his incident report that Johnson "was bleeding from his head and hand." The incident report of the registered nurse who provided medical treatment to Johnson stated that Johnson had "multiple lacerations to the head, face, hand and fingers," as well as "visible contusions." Further, the IDC found this to be a "serious" offense because *191 a "physician needed to come into [the] institution and render medical attention to [an] inmate" and because the incident "jeopardized safety [and] security in this maximum security prison."
The DCS rules are designed to maintain order and security in the prison setting, here a maximum security facility. This fight between two inmates resulted in multiple lacerations producing "a lot of blood" and requiring medical attention, including suturing of Johnson's wounds. Additionally, there is certainly evidence from which a fact finder could conclude that Johnson was hit with the metal grate  a likely explanation for Johnson's multiple lacerations requiring sutures. As a result, there was substantial evidence to support the decisions of the IDC and the Appeals Board that the injuries suffered by Johnson in the fight were serious bodily injuries, resulting from Witmer's violation of DCS rule 5-I-C.
Moreover, "assault on another person which causes pain or bodily injury" is an offense under DCS rule 5-I-C, and obviously, the evidence establishes an assault, albeit during a fight, which caused bodily injury and presumably some pain, since sutures were required. Thus, violation of DCS rule 5-I-C was clearly established by substantial evidence, and such violation would be a Class I offense, punishable by 60 days' disciplinary segregation if the offense were found to be serious or flagrant. Clearly, an assault producing multiple lacerations requiring suturing is serious and flagrant, particularly in the institutional setting of a maximum security prison.
Because the decision of the district court does not conform to the law, we reverse that decision and remand with directions to reinstate the decision of the Appeals Board, which affirmed the decision of the IDC finding Witmer guilty of violating DCS rule 5-I-C, aggravated assault/assault/fighting, and sanctioning him to 60 days' disciplinary segregation.
REVERSED AND REMANDED WITH DIRECTIONS.